UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re | ) |
| | ) |
| SHANE V. GARNER, | ) Case No. 6:13-bk-10012-KSJ |
| | ) Chapter 7 |
| Debtor. | ) |
| | ) |
| THE STATE OF TEXAS, | ) |
| | ) |
| Plaintiff, | ) |
| vs. | ) Adversary No. 6:13-ap-00201-KSJ |
| | ) |
| SHANE V. GARNER, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM OPINION GRANTING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Defendant, Shane Garner, owned and operated various entities that carried out a fraudulent scheme to provide purported debt management services targeting desperate consumers with large amounts of debt. Plaintiff, the State of Texas, filed suit in Texas state court against Garner and his businesses alleging violations of the Texas Deceptive Practices-Consumer Protection Act and the Texas Consumer Debt Management Services Act.[1] Before a judgment was rendered in the state court case, the Defendant filed for Chapter 7 relief, prompting the Plaintiff to file the present complaint seeking a determination that Garner's liability for deceptive

---

[1] The Texas Attorney General, specifically the Consumer Protection Division, is authorized to bring suit on behalf of aggrieved consumers under the Texas Deceptive Practices-Consumer Protection Act. *See* Tex. Bus. & Com. Code § 17.47. Plaintiff is also a creditor with standing to pursue this nondischargeability claim. *See In re Smith*, 39 B.R. 690 (Bankr. N.D. Ill. 1984).

trade practices under the aforementioned statutes should be excepted from the discharge under 11 U.S.C. § 523(a)(2)(A).

Defendant Garner was the owner, Director, President, and Chief Executive Officer of Credit Alliance Group, Inc. ("CAG")[2] and exercised complete control over CAG's operations. CAG targeted consumers with high unsecured debt and offered to perform debt management services its customers, claiming that use of its services would allow customers to settle their obligations for sums as low as 20 to 60 percent of the unsecured debt. Customers would pay CAG, usually monthly, and CAG promised to maintain at least a portion of that money in trust account for debt settlement purposes.

Plaintiff's Texas lawsuit alleged that Garner, through CAG, made numerous misrepresentations to induce customers into paying for debt settlement services it never provided. Further, the Plaintiff alleged that Garner and CAG commingled customer funds in its own operating account after representing each customer's funds were held in trust, and Garner used customer funds for personal expenses. Plaintiff also asserted that CAG operated for seven years without being properly registered as a debt management services provider with the State of Texas. All of the Plaintiff's claims were based on violations of Texas' Consumer Debt Management Services Act and Texas' Deceptive Trade Practices-Consumer Protection Act.[3]

After Garner filed for Chapter 7 relief and the Plaintiff filed this proceeding, the Court abated this adversary proceeding to allow the Plaintiff to obtain relief on the underlying claims in Texas state court. The Texas state court entered a Final Judgment and Permanent Injunction ("Final Judgment")[4] based on agreed stipulations and agreed findings of fact and conclusions of

---

[2] Garner and CAG also did business as Credit Services Today.
[3] Doc. No. 1, Exhibit A at pp. 12-14. *See generally* Tex. Fin. Code Ann. § 394 *et seq.* (Consumer Debt Management Services Act); Tex. Bus. & Com. Code Ann. § 17.41 *et seq.* (Deceptive Trade Practices-Consumer Protection Act).
[4] Doc. No. 21, Exhibit 14.

law, which held Garner liable to pay $12,100,000 to the Plaintiff, jointly and severally with CAG, "as Restitution to consumers and other identifiable persons pursuant to Texas Business and Commerce Code Section 17.47(d)."[5] The Final Judgment further held Garner liable to pay the Plaintiff $24,000,000 in civil penalties and $640,000 for attorney fees, all joint and several with CAG.[6]

Plaintiff now seeks summary judgment in this adversary proceeding.[7] Under Federal Rule of Civil Procedure 56, made applicable by Federal Rule of Bankruptcy Procedure 7056, a court may grant summary judgment where "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."[8] The moving party has the burden of establishing the right to summary judgment.[9] Conclusory allegations by either party, without specific supporting facts, have no probative value.[10] In determining entitlement to summary judgment, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."[11] "Where the record, taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."[12] "Once the movant . . . satisfies its initial burden under Rule 56(c) of demonstrating the absence of a genuine issue of material fact, the burden shifts to the nonmovant to "come forward with 'specific facts showing that there is a genuine issue for trial.'"[13]

---

[5] Doc. No. 21, Exhibit 14 at ¶ 4.1
[6] *Id.*
[7] Doc. No. 21.
[8] Fed. R. Civ. P. 56.
[9] *Fitzpatrick v. Schlitz (In re Schlitz)*, 97 B.R. 671, 672 (Bankr. N.D. Ga. 1986).
[10] *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985).
[11] *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007)
[12] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 s. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).
[13] *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 s. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986)).

In its summary judgment motion, the Plaintiff primarily relies on the collateral estoppel effect of the Final Judgment's findings to establish nondischargeability under § 523(a)(2)(A) of the Bankruptcy Code.[14] Collateral estoppel "bars the relitigation of any ultimate issue of fact actually litigated and essential to the judgment in a prior suit, regardless of whether the second suit is based upon the same cause of action."[15] Here the Final Judgment rests on agreed stipulations between the Plaintiff and the Chapter 7 trustee, *not* the Defendant Garner.[16] As such, the Court was hesitant to lend unquestioned collateral estoppel effect to the Final Judgment, particularly given that "the application of collateral estoppel in a particular case is a matter of trial court discretion."[17]

To determine whether a state court judgment should be afforded collateral estoppel effect, "the collateral estoppel law of that state must be applied to determine the judgment's preclusive effect."[18] The Final Judgment was issued by a Texas state court, so the Court applies Texas collateral estoppel law to determine whether collateral estoppel applies. "Under Texas law, a party is collaterally estopped from raising an issue when: (1) the facts sought to be litigated in the second case were fully and fairly litigated in the first; (2) those facts were essential to the prior judgment; and (3) the parties were cast as adversaries in the first case."[19] "Collateral estoppel principles apply under Texas law whether the issue is heard and determined through adjudication by a tribunal or is determined by the agreement of the parties."[20]

The Court's main concern over the Final Judgment's preclusive effect is that the findings of fact and conclusions of law were based on agreement between the Plaintiff and the Chapter 7

---

[14] All references to the Bankruptcy Code refer to 11 U.S.C. § 101 *et. seq.*
[15] *In re Gibralter Res., Inc.*, 197 B.R. 246, 252-53 (Bankr. N.D. Tex. 1996) *aff'd sub nom. In re Gibraltar Res., Inc.*, 202 B.R. 586 (N.D. Tex. 1996).
[16] *See* Doc. No. 21, Exhibit 14.
[17] *Balbirer v. Austin*, 790 F.2d 1524, 1526 (11th Cir. 1986).
[18] *In re St. Laurent*, 991 F.2d 672, 675-76 (11th Cir. 1993).
[19] *In re Gamble-Ledbetter*, 419 B.R. 682, 694 (Bankr. E.D. Tex. 2009)
[20] *Id.* (citations omitted).

trustee. Garner did not sign the agreed Final Judgment, and despite some unclear language, the Court concludes that Garner, individually, did not agree to its findings.[21] How can an agreed judgment collaterally estop a party who did not agree to its terms?[22] The Chapter 7 trustee clearly had authority to settle the state court case on behalf of the Debtor's business entities and his bankruptcy *estate*, but that was the extent of his authority. The fact that the Final Judgment's findings were based an "agreement" that Garner did not sign leads the Court, in its discretion, to decline lending the Final Judgment collateral estoppel effect.

Garner however never challenged or appealed the validity of the Final Judgment. So, even though the Court refuses to allow any of collateral estoppel effect to the Final Judgment, the Final Judgment is still in full force and effect and serves as valid evidence of the debt owed to the Plaintiff. Garner has not shown any evidence of an appeal of the Final Judgment. In fact, he has not filed anything at all in this case, as an answer to the Plaintiff's complaint or in response to the Plaintiff's motion for summary judgment.

The Plaintiff properly served Garner, who even initiated settlement discussions through his attorney in the main bankruptcy case.[23] Nevertheless, Garner completely failed to respond to the Plaintiff's complaint. Federal Rule of Civil Procedure 8(b)(6), made applicable in bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7008, states that "an allegation—other

---

[21] The Final Judgment states "for purposes of the agreed stipulations, agreed findings of fact and conclusions of law, definitions, restitution, civil penalties, attorneys' fees and costs, Credit Alliance Group, Inc., agreed permanent injunction, and other relief in Sections I. through VI. of this Final Judgment, appeared by and through their Chapter 7 Bankruptcy Trustee . . . ." (Doc. No. 21, Exhibit 14 at p.1.) Some language throughout the Final Judgment states that Garner, individually, did not agree to the judgment's injunctive relief, which may imply that he agreed to the other relief provided for in the Final Judgment. (*See, e.g.*, *id.* at p.2, ¶ 1.12.) However, considering that Garner's signature does not appear on the Final Judgment, and the Trustee "represented" him in the case, the Court concludes that the Final Judgment does not establish that Garner, in his individual capacity, agreed to the findings.

[22] "A consent or agreed judgment is contractual in nature and in effect is a written agreement between the parties as well as an adjudication. It is as conclusive as any other judgment as to the matters adjudicated." *Gamble-Ledbetter*, 419 B.R. at 694 (citing *Wagner v. Warnasch,* 295 S.W.2d 890, 893 (Tex. 1956)).

[23] Doc. No. 4. Garner's main case attorney, Christopher Shipley, later clarified that he does not represent Garner in this adversary proceeding. (Doc. No. 20.)

than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."[24] The Bankruptcy Rules required Garner to file an answer to the Plaintiff's complaint by December 16, 2013.[25] Garner never filed an answer or any responsive pleading by the deadline. Consequently, the statements made in the Plaintiff's complaint are deemed admitted. The factual allegations made in the Plaintiff's Texas state court complaint ("State Court Complaint"), which the Plaintiff incorporated into its complaint in this case, are also deemed admitted.[26]

"By failing to submit an answer or other pleading denying the factual allegations of Plaintiff's complaint, Defendant admitted those allegations, thus placing no further burden upon Plaintiff to prove its case factually."[27] To prevail, however, the Plaintiff must still show that the facts asserted in the complaint establish liability under § 523(a)(2)(A). "[W]ith respect to liability, a defendant's default does no more than concede the complaint's factual allegations; it remains the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action."[28]

Plaintiff's complaint only seeks relief on one count, alleging that the monies owed to it as restitution for the Defendant's fraudulent actions should be determined nondischargeable under § 523(a)(2)(A). "Courts have generally interpreted § 523(a)(2)(A) to require the traditional elements of common law fraud."[29] To prove fraud, the plaintiff must establish these elements by a preponderance of the evidence: (i) the debtor made a false representation with intent to deceive the creditor; (ii) the creditor relied on the misrepresentation; (iii) the reliance was justified; and

---

[24] Fed. R. Civ. P. 8(b)(6); Fed. R. Bankr. P. 7008.
[25] Fed. R. Bankr. P. 7012(a).
[26] Doc. No. 1, ¶ 23. The State Court Complaint is attached as Exhibit A to Doc. No. 1.
[27] *Burlington N. R. Co. v. Huddleston*, 94 F.3d 1413, 1415 (10th Cir. 1996) (discussing identical former Rule 8(d)).
[28] *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012).
[29] *SEC v. Bilzerian (In re Bilzerian)*, 153 F.3d 1278, 1281 (11th Cir. 1998).

(iv) the creditor sustained a loss as a result of the misrepresentation.[30] The Court now looks to the averments in the Plaintiff's complaint to determine if the debt created by the Final Judgment meets the elements listed above.

Restitution awarded under state consumer protection statutes often is deemed nondischargeable under section 523(a)(2)(A) because those statutes aim to recoup consumer losses resulting from misrepresentation and deceptive trade practices.[31] The elements of proof mimic the elements needed to prove fraud. Plaintiff however still must prove the elements under § 523(a)(2)(A) by a preponderance of the evidence.

First, Garner clearly made false misrepresentations intended to deceive consumers. Garner falsely represented: (1) participation in CAG's debt management services would result in settlement of the consumers' debts for 20% to 60% of the outstanding balance within 6 to 36 months;[32] (2) that customers would not "owe a dime" if Garner and CAG failed to successfully settle their customers' debts;[33] (3) that customers' funds would be held in an FDIC-insured escrow account under the customer's control;[34] (4) that CAG was a member of the FDIC;[35] (5)

---

[30] *SEC v. Bilzerian (In re Bilzerian)*, 153 F.3d 1278, 1281 (11th Cir. 1998). *See also Field v. Mans,* 516 U.S. 59, 73-75, 116 S. Ct. 437, 445-46, 133 L. Ed. 2d 351 (1995) (holding that Section 523(a)(2)(A) requires justifiable rather than reasonable reliance).

[31] *See, e.g.*, *In re Taite*, 76 B.R. 764, 773 (Bankr. C.D. Cal. 1987); *In re Audley*, 268 B.R. 279 (Bankr. D. Kan. 2001).

[32] Doc. No. 1, ¶¶ 26, 29 ("[T]he State Court Defendants ultimately failed to provide the debt settlement services as promised and failed to refund the fees charged, thereby defrauding consumers."); State Court Complaint (Doc. No. 1, Ex. A), at ¶ 11.2 ("CAG failed to provide the debt settlement services for which it charged fees to consumers.").

[33] Doc. No. 1, ¶ 28; State Court Complaint (Doc. No. 1, Ex. A), at ¶ 11.2 ("The cover page of enrollment packages has included the promise that customers would not owe Defendants' "a dime" if Defendants failed to perform as promised."). Garner and his businesses failed to perform the promised services. *See supra* note 32.

[34] Doc. No. 1, ¶ 30; State Court Complaint (Doc. No. 1, Ex. A), at ¶ 11.5 ("CAG not only charged fees for services never provided, it also diverted customers' funds in CAG's own operating account, including the account Defendant GARNER used to pay personal bills.") and ¶ 13.1(e).

[35] Doc. No. 1, ¶ 30 ("CAG enrollment packages have included an insignia stating 'Member FDIC' but CAG is not a member of the FDIC."); Doc. No. 21, Exhibit 15 (affidavit by FDIC stating that CAG "is not an insured depository entity and does not have a pending application with FDIC").

that customer's funds would be held in trust and under the customer's sole control;[36] (6) that CAG was properly registered as a debt counselor/service provider with the Texas Office of Consumer Credit Commissioner;[37] and (7) that certain contractual authorizations were valid when they were in fact void for the aforementioned failure to properly register with the Texas Office of Consumer Credit Commissioner.[38]

The two reliance elements are less clear from the Plaintiff's complaint, but nonetheless the Court finds them satisfied. Plaintiff, in its complaint, states that "[t]he consumers reasonably relied on the misrepresentations or failures to disclose."[39] Section 523(a)(2)(A) requires actual reliance and justifiable reliance, not reasonable reliance. But because this statement is deemed an admission by Garner, and reasonable reliance is a higher standard of reliance than the required justifiable reliance, the Court finds the second two elements of actual fraud under § 523(a)(2)(A) satisfied.[40]

Last, the Plaintiff must show that it sustained a loss as a result of the debtor's misrepresentations. Plaintiff states in its complaint that consumers sustained losses of over twelve million dollars; this statement is deemed admitted by Garner.[41] The Final Judgment further evidences a liquidated determination of consumer loss due to Garner's actions. Plaintiff has proven loss sufficient to satisfy the fourth element of fraud under § 523(a)(2)(A).

---

[36] Doc. No. 1, ¶ 31 ("[T]he State Court Defendants unlawfully diverted consumer funds that were to be held in trust for negotiations.") and ¶ 32; State Court Complaint (Doc. No. 1, Ex. A), at ¶¶ 11.5 & 11.6 ("Dissatisfied customers have discovered not only that they cannot get a refund of amounts paid as advance fees, but that they likewise have no control over, and cannot recover any of the funds CAG promised to hold in escrow.").
[37] Doc. No. 1, ¶ 33; State Court Complaint (Doc. No. 1, Ex. A), at ¶¶ 11.6-11.8.
[38] Doc. No. 1, ¶ 34;
[39] Doc. No. 1, ¶ 40.
[40] *See Field v. Mans*, 516 U.S. 59, 73, 116 S. Ct. 437, 445, 133 L. Ed. 2d 351 (1995) (holding the proper standard of reliance under § 523(a)(2)(A) is "justifiable reliance," and that it stands somewhere between "mere reliance" and "reasonable reliance").
[41] Doc. No. 1, ¶ 41.

Plaintiff has proven all four elements under § 523(a)(2)(A) for the $12,100,000 restitution portion of the Final Judgment.  As to the $640,000 attorney fee award also provided for in the Final Judgment, attorney fees resulting from a nondischargeable debt under § 523(a)(2)(A) also are deemed nondischargeable.[42]  Similarly, the Court finds the $24,000,000 civil penalty imposed by the Final Judgment that arose from Garner's fraud also is not dischargeable.[43]

In conclusion, the Court will grant the Plaintiff's motion for summary judgment,[44] not because collateral estoppel applies, but because the Final Judgment is valid and enforceable and the Plaintiff has established all four elements required to make the Final Judgment nondischargeable under § 523(a)(2)(A) of the Bankruptcy Code.

The Court will enter a separate Final Judgment consistent with these findings.

DONE AND ORDERED in Orlando, Florida, on September 5, 2014.

_____
KAREN S. JENNEMANN
Chief United States Bankruptcy Judge

Cheryl Marie Brittle, attorney for Plaintiff, is directed to serve a copy of this Order on interested parties and file a proof of service within 3 days of entry of the Order.

---

[42] *Cohen v. de la Cruz*, 523 U.S. 213, 118 S. Ct. 1212, 140 L. Ed. 2d 341 (1998).

[43] *See Cohen v. de la Cruz*, 523 U.S. 213, 118 S. Ct. 1212, 140 L. Ed. 2d 341 (1998) (interpreting § 523(a)(2)(A)'s exception to discharge to encompass "any liability arising from money, property, etc., that is fraudulently obtained, including treble damages, attorney's fees, and other relief that may exceed the value obtained by the debtor."); *In re Audley*, 268 B.R. 279, 285 (Bankr. D. Kan. 2001).

[44] Doc. No. 21.